HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELBRIDGE AND DEBRA STUART
FAMILY FOUNDATION,

   Plaintiff,

  v.

CAMP KOREY,

   Defendant.

Case No. C16-1365-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant Camp Korey's Motion to Dismiss. Dkt. # 7. For the reasons that follow, the Court **DENIES** Camp Korey's motion.

## II. BACKGROUND

The Court recites the facts as Plaintiff Elbridge and Debra Stuart Family Foundation (the "Stuart Foundation") alleges them in its complaint, suggesting no opinion as to whether those allegations will prove true. The Court cites the numbered paragraphs of the complaint using paragraph (¶) symbols.

In 2009, Elbridge H. Stuart III, whose great-grandfather founded the Carnation Milk Company, established the Stuart Foundation with inheritance funds after his father passed away. ¶¶ 6, 10. Stuart was on the board of directors at Camp Korey, a non-profit organization that operates camps for seriously-ill children in Washington. ¶ 7. At the

ORDER – 1

time, Camp Korey owned a parcel of land in Carnation, Washington upon which the Carnation Milk Company originally had been located ("Carnation Farms").  ¶ 8.  Camp Korey, however, was in financial distress.  ¶ 9.  As a solution, the Stuart Foundation formed Carnation Farms, LLC, which purchased Carnation Farms and then leased it back to Camp Korey.  ¶¶ 11-12.  The lease was for a period of up to thirty years and the annual rent was $1.00.  ¶ 12.

In 2012, Ann Stuart Lucas, Stuart's aunt and fellow board member, informed Camp Korey that she intended to create an endowment called the Elbridge and Evelyn Stuart Endowment for Camp Korey (the "Stuart Endowment" or "endowment agreement").  ¶ 13.  Her first contribution to the endowment was $30,000.  *Id.*  A month later, Lucas notified Camp Korey that it would not receive disbursements from the endowment until the corpus reached $1,000,000 and that "should Camp Korey at Carnation Farms cease to exist, I require that the endowment corpus be given to the [Stuart Foundation]."  ¶ 14.  Over the following years, Lucas donated or raised nearly $1,000,000 for the Stuart Endowment.  ¶ 16.  By accepting and depositing these donations into a bank account designated for the endowment, Camp Korey accepted and agreed to the two restrictions imposed by Lucas on the endowment.  ¶ 17.  When raising money, Lucas relied on Camp Korey's acceptance of these restrictions by discussing them with donors, most of whom were members of the Stuart family who intended for their donations to benefit charitable activities at Carnation Farms.  ¶ 18.

In 2016, Stuart resigned from the board of Camp Korey.  ¶ 20.  Days later, Carnation Farms, LLC notified Camp Korey that it was in default of several lease provisions.  ¶ 21.  Following a second notice of default, Camp Korey agreed to vacate Carnation Farms no later than September 30, 2016.  ¶ 22.

As a consequence of Camp Korey's departure from Carnation Farms, the Stuart Foundation demanded that Camp Korey forfeit the Stuart Endowment in accordance with Lucas' restrictions.  ¶ 23.  Camp Korey refused.  *Id.*

ORDER – 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On August 29, 2016, the Stuart Foundation filed the instant complaint alleging claims for breach of contract, ¶¶ 24-27, and declaratory relief, ¶¶ 28-29.  Camp Korey now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 7.  The Stuart Foundation opposes the motion.  Dkt. # 13.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits the Court to dismiss a complaint for failure to state a claim.  The rule requires the Court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).

In deciding whether a complaint states a claim for relief, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A document incorporated by reference may be relied upon "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "Documents not physically attached to the complaint may be considered only if (1) their authenticity is not contested and (2) the complaint necessarily relies on them."  *F.D.I.C. v. Clementz*, No. C13-737-MJP, 2013 WL 6212166, at *1 (W.D. Wash. Nov. 27, 2013) (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

## IV.  DISCUSSION

Camp Korey moves to dismiss the Stuart Foundation's claims on the basis that they are barred by the statute of frauds and based on an unreasonable interpretation of the

ORDER – 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

endowment agreement.  Dkt. # 7 at 6-12.  For support, Camp Korey submits four documents that it contends are incorporated by reference into the complaint: (1) the letter from Ann Stuart Lucas to Camp Korey describing the Stuart Endowment, Dkt. # 9 at 5; (2) the grant document memorializing Lucas' initial $30,000 donation, *id.* at 7; (3) the notification from Lucas imposing restrictions on the endowment, *id.* at 9-10; and (4) the thirty-year lease between Carnation Farms, LLC and Camp Korey, *id.* at 12-39.  As the authenticity of these four documents is uncontested and the complaint relies upon them, the Court finds it appropriate to consider them in resolving the instant motion.  *See Branch*, 14 F.3d at 454.

        **A.**      **"Cease to Exist" Provision of the Endowment Agreement**

      Camp Korey contends that the Stuart Foundation's interpretation of the endowment agreement is unreasonable.  According to Camp Korey, the provision requiring it to forfeit the endowment would be triggered only if it were to cease to exist as a corporate entity, not if it merely departed from Carnation Farms.

      "The touchstone of contract interpretation is the parties' intent."  *Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996).  "In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement but also from 'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'"  *Id.* (quoting *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 844 P.2d 428 (Wash. 1993)).  "If a contract has two or more reasonable meanings when viewed in context, a question of fact is presented."  *Bort v. Parker*, 42 P.3d 980, 988 (Wash. Ct. App. 2002).  In such instances, a contractual dispute cannot be resolved on a motion to dismiss.  *See SARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1008 (9th Cir. 2014).

      Here, in crafting the alleged endowment agreement, Ann Stuart Lucas required:

ORDER – 4

"Should Camp Korey at Carnation Farm[s] cease to exist, I require that the endowment corpus be given to the Elbridge and Deborah Stuart Family Foundation." Dkt. # 9 at 9.

This provision is ambiguous because it is susceptible to two reasonable meanings. The first, as maintained by the Stuart Foundation, is that "cease to exist" refers to Camp Korey's residence at Carnation Farms. As alleged in the complaint, Carnation Farms bore a special significance to members of the Stuart family, many of whom "affirmatively desired that their restricted gifts always be used to support charitable activities at Carnation Farms." ¶ 18. The second, as maintained by Camp Korey, is that "cease to exist" refers to the organizational dissolution of Camp Korey. This is reasonable because the term, "Camp Korey at Carnation Farm[s]," is used in several places to refer to Camp Korey as an entity and not as a geographical designation. *See, e.g.*, Dkt. # 9 at 7 ("Grant Recipient: Camp Korey at Carnation Farm[s]"). Because there are two reasonable meanings of the "cease to exist" provision, an issue of fact exists as to which meaning controls. Camp Korey's motion to dismiss is denied on this basis.

### B.  Statute of Frauds

Camp Korey contends that the statute of frauds applies to the endowment agreement and requires the dismissal of the Stuart Foundation's complaint. Camp Korey did not sign Lucas' notification setting for the "cease to exist" provision. Dkt. # 9 at 9-10. Because it did not sign the notification, Camp Korey maintains the "cease to exist" provision is invalid under the statute of frauds.

The statute of frauds applies to "[e]very agreement that by its terms is not to be performed in one year from the making thereof." RCW 19.36.010. "Under the statute of frauds, such contracts are unenforceable unless they are set forth in writing and signed by the party to be bound." *Steadman v. Green Tree Servicing, LLC*, No. C14-0854JLR, 2015 WL 2085565, at *7 (W.D. Wash. May 5, 2015) (citing *Family Med. Bldg., Inc. v. State, Dep't of Soc. & Health Servs.*, 702 P.2d 459, 461 (Wash. 1985)). "In Washington, the test for applying the statute of frauds is whether a contract 'cannot be performed

ORDER – 5

within one year from its making.'" *Id.* at \*8 (quoting *Winslow v. Mell*, 295 P.2d 319, 322 (Wash. 1956) (emphasis added).  This test requires an examination of "the surrounding circumstances to ascertain the terms of the contract and to determine whether, by those terms, the contract must of necessity require more than one year to perform."  *Winslow*, 295 P.2d at 322.

But the one-year provision of the statute of frauds does not apply where the contract is for an indefinite term.  *Sargent v. Drew-English, Inc.*, 12 Wash. 2d 320, 328, 121 P.2d 373, 377 (1942) ("The contract was not only made for an indefinite length of time, but was terminable at will.  Consequently, it could have been . . . terminated within the duration of a year at the will of either party.  We have held that in such cases the statute does not apply."); *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 523 F. Supp. 56, 63 (E.D. Wash. 1981) ("Since, in this case, the oral contract was for an indefinite period of time and . . . it was terminable at will, the Statute of Frauds does not apply."); 25 Wash. Prac., *Contract Law and Practice* § 3:9 (3d ed.) ("Generally, the one-year provision of the statute does not apply to a contract made for an indefinite length of time").

Here, the alleged endowment agreement provides that Camp Korey would receive distributions from the endowment for an unspecified period, except that it would be required to forfeit the endowment corpus to the Stuart Foundation "[s]hould Camp Korey at Carnation Farm[s] cease to exist."  Dkt. # 9 at 9.  As noted above, it is reasonable to interpret the "cease to exist" provision as a contingency that would be triggered in the event of Camp Korey's departure from Carnation Farms.

The statute of frauds does not apply because the endowment agreement was for an indefinite period.  The agreement does not specify any finite term and, as alleged by the Stuart Foundation, Camp Korey was required to return the endowment funds at any point

ORDER – 6

it elected to depart from Carnation Farms.[1]   In opposition, Camp Korey maintains that the agreement was permanent because Washington law presumes endowments to be "of permanent duration."  Dkt. # 7 (citing RCW 24.55.025(3)(a)).  But Camp Korey omits key language from this statute.  The full provision, in relevant part, is as follows:  "Terms in a gift instrument designating a gift as an endowment . . . (a) Create an endowment fund of permanent duration unless other language in the gift instrument limits the duration or purpose of the fund."  RCW 24.55.025(3).  Plainly, the presumption of permanent duration is overcome in instances where there is language limiting the duration of an endowment.  That is the case here, as the receipt of endowment funds was contingent upon Camp Korey's presence at Carnation Farms, the end of which was indefinite.[2]  Camp Korey's motion to dismiss under the statute of frauds is denied.

## V.   CONCLUSION

For the reasons stated above, the Court **DENIES** Camp Korey's Motion to Dismiss.  Dkt. # 7.

DATED this 27th day of January, 2017.

_Richard A. Jones_

The Honorable Richard A. Jones
United States District Judge

---

[1] Camp Korey relies on its separate thirty-year lease agreement to attach a finite duration to the endowment agreement.  But the lease, which was formed more than two years prior to the endowment, is a completely separate contract that does not dictate the duration of the endowment agreement.

[2] Camp Korey contends that the duration of the endowment is not limited by the "cease to exist" provision.  Dkt. # 15 at 14-15.  In Camp Korey's view, all that happens if the provision is triggered is a transfer of the endowment corpus to the Stuart Foundation.  *Id.* at 15 ("In other words, this language purports to *transfer* the endowment . . ., it does not *end* the endowment.") (emphasis in original).  This position, however, is irreconcilable with Camp Korey's contention that, by taking the endowment, the Stuart Foundation would "*frustrate* the express purpose of the endowment, which was to benefit Camp Korey."  *Id.* (emphasis in original).  Surely, the "cease to exist" provision limits the endowment within the meaning of RCW 24.55.025(3).

ORDER – 7